FILED
2008 May-22 PM 12:38
U.S. DISTRICT COURT
N.D. OF ALABAMA



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| LARRY MCCALLISTER, M.D., as Legal Guardian for Kathleen Warner, M.D., <br><br> Plaintiff, <br><br> vs. <br><br> MAXWELL H. PULLIAM, JR., et al., <br><br> Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  5:07-CV-01672-LSC<br>)<br>)<br>)<br>)<br>) |

MEMORANDUM OF OPINION AND ORDER

The Court has for consideration a motion to dismiss Plaintiff's Complaint for lack of jurisdiction (Doc. 12), which was filed by Defendants on November 6, 2007, and a motion to dismiss Plaintiff's Amended Complaint (Doc. 17), filed on January 4, 2008. Defendants have also filed a motion to strike affidavits attached to Plaintiff's response to their initial motion to dismiss. (Doc. 19.) The issues raised in these motions have been briefed by both parties and are ripe for review. For the reasons that follow, Defendants' first motion to dismiss will be deemed moot; Defendants' motion to strike will be denied; and the Court's ruling on the second motion

will be deferred until an evidentiary hearing can be held to take additional evidence on the issue of Kathleen Warner's mental capacity.

I.   Background.

Larry McCallister initiated this action on September 13, 2007, when he filed a Complaint as legal guardian for his adult daughter, Kathleen Warner. The Complaint sets forth allegations that the defendants, Maxwell Pulliam, Jr., and the law firm of Christian & Small, LLP (collectively, "Defendants"), are liable for legal malpractice in connection with Pulliam's representation of Warner in the settlement of a divorce action.  The Complaint also states that this Court has jurisdiction of Plaintiff's state law cause of action under 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiff lists himself and Warner as adult residents of Indiana, while Defendants are described as citizens of Alabama.

On November 6, 2007, Defendants moved to dismiss Plaintiff's Complaint for lack of diversity jurisdiction.  Defendants maintain that Plaintiff cannot establish diversity of citizenship because Warner is a citizen of Alabama.  As support for their argument, Defendants submit documents

showing that McCallister was appointed as legal guardian and conservator for Warner, an Alabama resident, by the Cullman County Probate Court in Cullman, Alabama, and he failed to comply with the requirements of Section 26-8-45 of the Alabama Code when he removed Warner to the State of Indiana.  Section 26-8-45 requires guardians to obtain an order from the probate court authorizing the ward's removal.  Since there is no evidence that such an order was sought or obtained, Defendants contend that Warner was not lawfully removed from the State of Alabama; therefore, she remains a legal resident of Alabama—though she has lived in Indiana for at least two years.

In opposition to Defendants' motion to dismiss, Plaintiff filed a memorandum of law and an Amended Complaint, which changes the name of the city in which Warner resides in Indiana, and adds details regarding McCallister's guardianship, his reasons for relocating Warner to Indiana, and Warner's preference and intention to remain in Indiana.  Defendants subsequently filed a motion to dismiss the Amended Complaint.  They argue that any jurisdictional defect in the original complaint cannot be cured by amendment because the "time of filing" rule applies to this Court's

determination of diversity jurisdiction. Defendants also moved to strike the affidavits submitted by Plaintiff as "irrelevant" to the Court's consideration of jurisdiction because the information was not set forth in the original complaint.

II.     Standard.

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Since federal courts are courts of limited jurisdiction, subject matter jurisdiction must exist before a court can decide any issues presented in the case. *See id.* A motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) may attack jurisdiction either facially or factually. *See Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003) (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990)). "'Facial attacks' on the complaint 'require[] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [the] complaint are taken as true for purposes of the motion.'" *Lawrence*, 919 F.2d at 1529 (quoting *Menchaca v. Chrysler Credit*

*Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)).  On the other hand, "'[f]actual attacks' . . . challenge 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.'"  *Lawrence*, 919 F.2d at 1529 (quoting *Menchaca*, 613 F.2d at 511).

Procedurally, facial and factual attacks differ.  *See Lawrence*, 919 F.2d at 1529.  "On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion—the court must consider the allegations of the complaint to be true."  *Lawrence*, 919 F.2d at 1529 (citing *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981)).  However, "when the attack is factual, the trial court may proceed as it never could under Rule 12(b)(6) or Fed. R. Civ. P. 56."  *Lawrence*, 919 F.2d at 1529. Since the court's ability to exercise jurisdiction over the case is at issue in a factual 12(b)(1) motion, "there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.  In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional

claims." *Id.* The burden of proof on a Rule 12(b)(1) motion is on the party averring jurisdiction. *Gilmore v. Day*, 125 F. Supp. 2d 468, 471 (M.D. Ala. 2000) (citing *Thomson v. Gaskill*, 315 U.S. 442, 446 (1942)).

III. Discussion.

McCallister, as Warner's guardian, is deemed to have the citizenship of his ward for purposes of diversity jurisdiction. 28 U.S.C. § 1332(c)(2). Therefore, this Court is called upon to make a determination whether Warner, for the purposes of this lawsuit, is a citizen of Alabama or Indiana. This issue is complicated by the fact that while Warner is an adult, typically free to choose her own residence and make the decisions that underlie a court's determination of citizenship, the Cullman County Probate Court determined that Warner was an incapacitated person unable to manage her property and business affairs, and in need of a conservator and guardian.

Defendants argue that their jurisdictional challenge is purely legal. They cite the split in circuits' law on the question whether a guardian has the authority to change the domicile of his incompetent ward. (Doc. 27 at 1.) This circuit split is summarized, in part, by the Fifth Circuit Court of Appeals in *Acridge v. Evangelical Lutheran Good Samaritan Soc'y*, 334 F.3d

444, 448-49 (5th Cir. 2003).  The Fifth, Seventh, and Tenth Circuits have adopted a "best interests" analysis, which essentially allows the guardian to change his ward's domicile if it is in the "best interests" of the ward and not merely to create or destroy diversity jurisdiction.  *Acridge*, 334 F.3d at 450; *Dakuras v. Edwards*, 312 F.3d 256, 258 (7th Cir. 2002); *Rishell v. Jane Phillips Episcopal Mem'l Med. Ctr.*, 12 F.3d 171, 173 (10th Cir. 1993).  The Third and Fourth Circuits, on the other hand, have rejected that approach in certain circumstances.  *Juvelis v. Snider*, 68 F.3d 648, 656-57 (3d Cir. 1995); *Long v. Sasser*, 91 F.3d 645, 647-48 (4th Cir. 1996); *Foster v. Carlin*, 200 F.2d 943, 946-47 (4th Cir. 1952).  The Eleventh Circuit has not spoken on the issue, and Defendants contend that the requirements of Alabama Code § 26-8-45 establish a procedure for changing the domicile of a ward that is inconsistent with a "best interests" analysis.  (Doc. 27 at 3-4.)[1]

---

[1] Defendants also argue that McCallister should not be allowed to "benefit from his misdeeds" because he removed Warner from the state contrary to Alabama law.  (Doc. 18 at 5-6.)  They cite no legal authority to support this contention.  Morever, the Court has doubts that Defendants can establish that they would be legally entitled to the benefit of an assertion of "unclean hands."  *See, e.g., Calloway v. Partners Nat. Health Plans*, 986 F.2d 446, 450-51 (11th Cir. 1993) (holding that in order to assert the doctrine of unclean hands, a defendant must show that "the plaintiff's wrongdoing is directly related to the claim against which it is asserted" and the defendant was "personally injured by [the plaintiff's] conduct").

Before this Court dives into sorting case law and deciding whether a guardian can change his ward's domicile, it is best to ask first whether the *ward* can legally change her citizenship for diversity purposes. Plaintiff argues that Warner can choose her own domicile, and that she has done so in this case.

"Citizenship is equivalent to 'domicile' for purposes of diversity jurisdiction." *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002) (citing *Hendry v. Masonite Corp.*, 455 F.2d 955, 955 (5th Cir. 1972)). "A person's domicile is the place of 'his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom . . . .'" *Id*. at 1257-58 (quoting *Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir. 1974), *cert. denied*, 419 U.S. 842, 95 S. Ct. 74, 42 L. Ed.2d 70 (1974)). "Furthermore, a change of domicile requires '[a] concurrent showing of (1) physical presence at the new location with (2) an intention to remain there indefinitely . . . .'" *Id*. at 1258.

In the case at hand, it is undisputed that Warner has been physically present in Indiana for at least two years, and she remains in Indiana today.

The question, then, is whether Warner possessed the requisite intent, as an incapacitated individual, to change her own domicile. This possibility was recognized as early as 1934 in *Coppedge v. Clinton*, 72 F.2d 531 (3d Cir. 1934), a case in which the appellate court addressed circumstances comparable to the ones in this action; namely, the ward had changed his residency from Oklahoma to Arkansas with the permission of his guardian, "but without the formal consent and approval of the county court of Creek County." *Id.* at 533. Oklahoma law provided that a guardian "may fix the residence of the ward at any place within the State, but not elsewhere, without permission of the court." *Id.* (quoting *Laughlin v. Williams*, 76 Okl. 246 (1919); C.O.S. § 6587 (1921)). Noting that "[i]t would seem to follow from this decision that the statute undertakes to inhibit such an incompetent from changing his domicile from within to without the state, except with the permission of the court having jurisdiction of the guardianship," the appellate court nonetheless concluded that "[t]he right to change one's domicile is a natural right," and "if [the ward] actually removed from Oklahoma to Arkansas, and with the requisite mental capacity formed the settled intent and purpose to remain in the latter state

indefinitely, and took up his actual residence there, we fail to see how the laws of Oklahoma could have extra-territorial force and effect, and prevent him from acquiring a domicile in Arkansas." *Id.* at 534.

Other courts have more recently held that "[o]nly minimal competency is required to choose a new domicile; even if the person in question has been adjudged incompetent by a court and is incapable of managing his own affairs, he can change his domicile so long as "he understands the nature and effect of his act." *Acridge v. Evangelical Lutheran Good Samaritan Soc'y*, 334 F.3d 444, 448 (5th Cir. 2003) (quoting *Juvelis v. Snider*, 68 F.3d 648, 655 (3d Cir. 1995)); *see also Long v. Sasser*, 91 F.3d 645, 647 (4th Cir. 1996) (quoting *Foster v. Carlin*, 200 F.2d 943, 946 (4th Cir. 1952); *Davis v. Mullis*, 296 F. Supp. 1345, 1346-47 (S.D. Ga. 1969). "The burden of proving . . . sufficient mental capacity is plainly on him who alleges it." *Long*, 91 F.3d at 647 (quoting *Foster*, 200 F.2d at 946).

In support of the contention that Warner had the requisite mental capacity to choose to move to Indiana and intend to reside there

indefinitely, Plaintiff submits the affidavits of McCallister and Warner.[2] While it is noteworthy that Warner has signed an affidavit saying that she intends to remain a resident and citizen of the State of Indiana and understood her decision to move to Indiana in October 2005, due to the nature of the legal claims in this case, the Court is hesitant to take such evidence as determinative on the issue of domicile. This lawsuit stems from the claim that due to mental delusions, Warner did not understand or appreciate the nature of settlement proceedings and her signature on a document purporting to be a settlement agreement.

---

[2]Defendants have moved to strike these affidavits from the record as "irrelevant" because the information contained therein was not set forth in the original complaint. This argument relates to Defendants' assertion that Plaintiff's Amended Complaint is improper because any additional allegations regarding Warner's citizenship cannot be considered under the "time of filing" rule. In support of this argument, Defendants quote *Harris v. Garner*, 216 F.3d 970 (11th Cir. 2000), in which the appellate court wrote: "It is well established that the only citizenship of the original parties that matters for purposes of determining whether diversity jurisdiction exists is their citizenship at the time the lawsuit is filed; any changes in a party's citizenship that occur after filing are irrelevant." *Id*. at 983. (Doc. 13 at 2.)

The law cited by Defendants pertains to *changes in citizenship* after the filing of the original complaint—not changes in evidence or factual allegations that support the citizenship originally asserted to exist. In both Plaintiff's first and amended complaints, Warner is alleged to be an Indiana resident/citizen. Any details added in the Amended Complaint are not prohibited by the "time of filing" rule.

Federal Rule of Civil Procedure 15(a) permits a plaintiff to amend their complaint once before a defendant's responsive pleading is served. *See, e.g., Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1291 (11th Cir. 2007). Plaintiff did so here, and the Amended Complaint controls. Therefore, Defendants' first motion to dismiss (Doc. 12) is MOOT, and Defendants' motion to strike affidavits (Doc. 19) is DENIED.

There is, however, additional evidence in the record that supports Plaintiff's contention that Warner had the mental capacity to legally change domiciles. On October 14, 2005 (approximately the time of Warner's move to Indiana), Steven Smith, guardian ad litem, signed a report stating that in his opinion, Warner was "capable of making an[] informed and intelligent decision about who she would prefer to serve as guardian and conservator." (Doc. 13, attach. 2 at 21.)  This is helpful, but not conclusive.

In order to make a conclusive determination that Warner did indeed have the mental capacity to change domiciles for diversity purposes, an evidentiary hearing is necessary. The Court's ruling on Defendants' motion to dismiss Plaintiff's Amended Complaint (Doc. 17) will be DEFERRED until an evidentiary hearing can be held to address Warner's mental capacity.

However, Plaintiff's counsel has informed the Court, that McCallister is unable to pursue litigation at this time due to physical illness.[3]  Plaintiff's counsel is therefore required to provide a status report to the Court and opposing counsel every thirty (30) days, beginning thirty (30) days from the

---

[3] This information was conveyed to the Court in a telephone conference with both parties on April 23, 2008.  Defense counsel conveyed that they believed they were entitled to have their motion(s) to dismiss granted, but were not otherwise opposed to a delay in the proceedings.

date of this Order.  Until further Order of this Court, the above-entitled action is STAYED.

Done this 22nd day of May 2008.

_____<br>
L. SCOTT COOGLER<br>
UNITED STATES DISTRICT JUDGE<br>
153671